# SUPREME JUDICIAL COURT

FOR THE COUNTY OF

# YORK.

*APRIL TERM,*

1826.

---

## CLEAVES, *by guardian, vs.* FOSS.

After a sale of lands at auction, by license of Court, it is the duty of the seller to make and tender a deed within a reasonable time. Two days after the sale is a reasonable time for this purpose. And the purchaser is justified in delaying to complete the contract till he has had a reasonable time to take legal advice respecting the formality and validity of the deed tendered.

In a declaration upon a contract required by the statute of frauds to be in writing, it is not necessary expressly to allege that the contract was reduced to writing.

The auctioneer, in a sale of lands, is the agent of both parties; and his entry of the name of the purchaser on his book or memorandum containing the particulars of the contract, is a sufficient signing, within the statute of frauds.

THIS was an action of the case, which came before the Court upon a general demurrer to the declaration, in which were recited the following facts.

The plaintiff's guardian having obtained license of the Supreme Judicial Court to sell a certain lot of land for his benefit, and having given bond, and complied with the requisitions of law in such cases, and having duly advertised the land; it was exposed to sale at public vendue, and struck off to the defendant at the sum of two hundred and ten dollars, he being the highest bidder. The name of the defendant was immediately entered as the purchaser, in the sales-book kept for that purpose, by the clerk of

the auctioneer, and by his direction, together with the number and description of the lot, the price at which it was struck off, and for whose account it was sold; and at the close of the sales, there being other property sold, the sales of the day were examined and attested by the auctioneer, by subscribing his name to the account entered in the book.   Two days afterwards the guardian tendered to the defendant a deed of conveyance of the land, with covenants that he had observed the directions of law relative to the sale and proceedings, and that he had good right and lawful authority to make the sale ; and thereupon demanded the consideration money; which the defendant refused to pay. Afterwards the land was again advertised, and sold at auction to another person, for one hundred and sixty dollars.   The declaration concluded by charging the defendant as liable for the difference between the first and last sales, with the expenses of the latter, amounting in all, to fifty-four dollars.

The arguments of the counsel were furnished to the Court in writing, of which the following is a brief abstract.

N. Emery, in support of the demurrer.   No promise is formally alleged against the defendant, that he would become the purchaser of the land; nor are any conditions of sale stated; nor any terms of payment; nor the nature of the security to be given; nor the time for executing the deed; nor does it appear that any abstract of title was exhibited; nor that it was declared that the highest bidder should be deemed the purchaser.   Neither is it stated that there was any agreement or condition in writing that on failure of payment of the money by the defendant a new sale should be made; nor that he should pay the difference between the two sales; nor that he ever signed any memorandum or note in writing, engaging to become the purchaser and to pay the money alleged; nor that any other person made the contract by his authority.

Under these circumstances the defendant considers himself protected by the statute of frauds ; the first section of which is similar to the fourth section of *Stat.* 29 *Car.* 2, *cap.* 3.

Sales at auction are within the statute of frauds. *Hinde v. Whitehouse* 7 *East* 558. *Blagden v. Bradbear* 12 *Ves.* 466. *Buckmaster v. Harrop* 7 *Ves.* 341. The auctioneer, by entering the name of the purchaser in writing, is not thereby an agent authorized by him to sign an agreement. *Stansfield v. Johnson* 1 *Esp.* 101. *Walker v. Constable* 1 *Bos. & Pul.* 306. 1 *Jacob & Walker* 350. The cases on the other side are such as have adopted the opinion that an auctioneer, by his character as such, became agent for both parties, upon the knocking down of the hammer. This opinion is founded on the case of *Simon v. Motivos,* as reported in 3 *Burr* 1921. But there is nothing in our statute encouraging such a conclusion ; nor is there any thing in the employment of an auctioneer, which should make him an agent for the purchaser. In the report of that case in *Bull. N. P.* 280, it is said that the auctioneer wrote on the catalogue the defendant's name, and the price, by the order and assent of the defendant. And in *Burrow's* report it is said that the buyer's coming the next day and seeing the goods weighed was an additional circumstance, that deserved attention. This fact of the defendant's express order to write his name on the catalogue, provided the conditions of sale were annexed, might have gone far to influence the decision of the Court. In *Emmerson v. Heelis* 2 *Taunt.* 45, the Chief Justice thought it a great misfortune that the case of *Simon v. Motivos* was not overturned before any others were decided upon it.

The case of *Coles v. Trecothick,* as reported in 9 *Ves.* 250, has not fairly represented the meaning of Lord *Eldon* as to there being no distinction between the 17th and 4th section of the English statute of frauds. He meant that he did not consider the auctioneer an authorised agent in either case. 1 *Jacob & Walker* 350. See 4 *Wheat.* 96, *note.* In England brokers are regulated by statute. Not so here. But an auctioneer is not necessarily a broker, even there. His business is to sell publicly; not to buy and sell, like a broker. *Wilkes v. Ellis* 2 *H. Bl.* 555.

This is a mere parol contract; and many cases have been decided in equity in favor of parties who proposed to sell, and made some entries in writing, and did other acts, and for whom auctioneers have done acts; as strong as the present case. *Whaley*

Cleaves v. Foss.

v. Baguel 1 Bro. Parl. Ca. 345. Mason v. Armitage 13 Ves. 1.
Buckmaster v. Harrop 13 Ves. 456. Mortlock v. Butler 10 Ves.
310. Symonds v. Ball 8 D. & E. 151. Judicial sales in England,
under a decree in Chancery, even when confirmed by a master's
report, are not invariably binding; but on special circumstances
the Court will open the bidding. Ryder v. Gower 6 Bro. Parl.
Ca. 306. An entry by a clerk, of a purchaser's name, has been
holden insufficient. Blore v. Sutton & als. 3 Meriv. 237.

In New-York, a sheriff's sale of lands is deemed within the
statute of frauds. Jackson ex dem. Gratz v. Cotlin 2 Johns 248.
Writing a name, and affixing a seal, on the back of a lease, is à
nullity. Jackson v. Titus 2 Johns. 480

The Courts in the United States do not appear disposed to go
the length of the English decisions on this subject. Webster &
al. v. Hoban 8 Cranch 399. See also Stackpole v. Arnold 11 Mass.
27. Winslow v. Loring 7 Mass. 392. The relaxation of the
statute of frauds has been the occasion of much perjury and fraud;
and it is a subject of regret that the statute has not been rigor-
ously observed. Lindsay v. Lynch 2 Sch. & Lefr. 1 Grant v.
Naylor 4 Cranch 235.

Against the position that the auctioneer is the agent of both
parties, it may be observed that in a point of fact the auctioneer
writes down the name of the buyer in furtherance of his own
views, or by direction of the seller. No man bids at an auction
under the idea that the auctioneer is to become his agent to make
a contract for him, and finally bind him by knocking down the
hammer and writing his name. The bidding is made upon the
impulse of the moment, to which a *locus penitentiœ* ought to be
allowed; and if the bidder is not called on to confirm his offer by
writing his name to the conditions of sale, or giving express direc-
tions that it should be done, he ought not to be bound. He could
not suspect that the auctioneer, who is not of his own selection,
was to be forced upon him as his own agent. The whole address
of the auctioneer is always exerted to get the best possible terms
for the seller, whose will and interests are his own.

The character of an agent implies responsibility to his princi-
pal. But could the purchaser of land maintain an action against

Cleaves v. Foss.

the auctioneer for not writing his name, after the hammer was knocked down ? And might not the auctioneer with propriety contend that he struck down the hammer to signify that his employer the seller was satisfied with the offer, and that the bidder might perfect the contract by writing his own name, or calling on some one to write it for him ?

It seems the most correct conclusion, that whenever an omission is made at an auction to state in writing the conditions of the sale, and the last bidder does not sign or expressly authorize the signing of an agreement to become the purchaser, the case should be governed by the rule laid down by the Court in *Winslow v. Loring* 7 *Mass.* 392:—that " when the highest bidder at a sheriff's " sale refuses to take and pay for the article he has bid off, the " officer has authority to set up the article again at auction, and " to sell it to the highest bidder." This mode terminates the controversy at once, neither party being bound if the purchaser neglects to take and pay. There is no difference in principle between the cases of the sheriff and the guardian. Both wish to raise the money. Indeed it seems more important that here the liberty should be given to the party bidding for land to remain unbound till he signs an agreement; because it is not the practice in general to give abstracts of the title, and therefore time should be allowed to look into it. And if an abstract were exhibited at the sale, still the purchaser ought to be permitted to recur to the records and satisfy himself that the title is good; and to consult counsel respecting both the land and the deed proposed to be given ; as well as to examine the actual condition of the land.

The plaintiff, therefore, if every thing relating to the subject of the supposed contract had been binding, has been much too precipitate. It is true he was bound to tender the deed on the day of sale. *Hagedorn v. Laing* 6 *Taunt.* 162. *Berry v. Young* 2 *Esp.* 640. *Cornish v. Rowley* 1 *Selw. N. P.* 160. But the defendant was entitled to a reasonable time to determine whether it was prudent for him to accept it, and the length of this period may perhaps be determined by reference to the notice to quit, allowed to tenants at will. Such notice from the 17th to the 30th of September was decided in Massachusetts to be insuffi-

cient. *Ellis v. Paige & al.* 1 *Pick.* 43. In the present case the deed was tendered on the 15th of November, and the land resold on the 27th of the same month. The plaintiff having thus, before the lapse of reasonable time, chosen to seek his redress in a new sale, he ought not to be admitted to another remedy.

By the declarations and pleadings on these subjects, so far as they appear in the English books of reports, it seems usually to be one of the conditions of sale that the highest bidder shall be the purchaser, and shall sign an agreement to complete the conditions of sale; and the plaintiff alleges a compliance with all the requisites to make out his case. But the case at bar is manifestly an attempt to make the most of one altogether defective. 16 *East* 44.

As the conditions of sale did not set forth the kind of deed to be given, it was natural for the purchaser to conclude that he was to be protected by a general warranty; such deeds being often given by guardians in similar cases. And the want of such covenants in the deed offered, may constitute another reason to justify the defendant in refusing to complete the parol agreement.

*E. Shepley* for the plaintiff. The only question in this case is whether an action can be maintained for a refusal to perform a contract for the sale of real estate at auction ; the purchaser's name having been written down against the lot, at the time, by the auctioneer.

In 1794, *Eyre C. J.* in the case of *Stansfield v. Johnson* 1 *Esp.* 104 held the negative of this question, considering the contract as within the statute of frauds, and therefore not binding, because not signed by the party or his agent. This was only a *nisi prius* decision, without consideration or argument.

In 1798 the case of *Walker v. Constable* 1 *Bos. & Pul.* 306 was decided in the same way, and rests principally on the authority of *Stansfield v. Johnson.* It is only a brief note by the reporter of what the Court decided ; and the case appears to have received very little consideration.

The case of *Buckmaster v. Harrop* 7 *Ves.* 341 was decided in 1802 by Sir William Grant upon the authority of these two pre-

ceding cases, and without any examination of the principle upon which they were determined.

In New-York in 1804, the English authorities, as they then stood, were followed in *Simonds v. Catline* 2 *Caines* 61, *by Kent C. J.* who held that sheriffs' sales of real estate at auction were within the statute of frauds. And upon the authority of this case were decided those of *Jackson v. Catlin* in 1807, in 2 *Johns.* 248, and in 1811 in 8 *Johns.* 520.

Thus has been reared a superstructure of imposing appearance, having no foundation in principle, and very little in authority ; resting upon nothing more than the *dictum* of a single Judge at *nisi prius.* It had never received an examination by the powerful minds of the gentlemen then at the bar, and on the bench ; until that of the Lord Chancellor was applied in 1804 to a revision of the principle of the former decisions in the case of *Coles v Trecothick* 9 *Ves.* 249, in which their authority was deliberately rejected. And several years after this decision, in the case of *Emmerson v. Heelis* 2 *Taunt.* 38, the principle of *Coles v. Trecothick* was adopted in the Common Pleas upon full argument and great consideration ; and was followed in 1811, by that of *White v. Procter* 4. *Taunt.* 209. And in 1814 Sir Wm. Grant, in the case of *Kerneys v. Procter*, 3 *Ves. & Beame.* 57, retraces his own steps, and decides that sales at auction are not within the statute of frauds. Thus it is finally settled in England, both at common law and in chancery. In New-York the doctrine holden in chancery is at variance with their decisions at common law. *McComb v. Weeks* 4 *Johns. Chan.* 659. Will this Court decide this question in accordance with the later authorities, which have been settled upon principle, after argument, and upon mature deliberation ; and which have overruled the earlier decisions ; or in accordance with decisions of an older date, which had been made without argument, or deliberation ; which would not stand the test of principle, and have therefore been repudiated ?

WESTON J. delivered the opinion of the Court.

The first point taken against the declaration is, that it contains no distinct averment of a promise on the part of the defendant to

become the purchaser of the land, which was offered for sale. But the facts relied upon, by which to charge him, are set forth, his liability thereupon and an *assumpsit* in consideration of that liability averred, which is sufficiently formal in this particular, if such promise can be raised or implied by law from the facts. It is objected that it does not appear, from any conditions of sale, that the highest bidder was to be the purchaser ; but this is implied from the nature of the transaction. It is also urged that the terms of payment or security required were not agreed: it must then be understood that payment was to be made, when the conveyance should be executed. It is further objected that no abstract of title was furnished ; but this is not practised among us. It was in the power of the purchaser to satisfy himself upon this point at the register's office, or by other inquiries. It is insisted that, notwithstanding what was done, a *locus penitentiæ* remained to the defendant, until he could satisfy himself as to the title, and as to the condition of the land ; but in regard to these particulars, he should have satisfied himself, before he offered to become the purchaser. He had an opportunity to do so ; and it was a course suggested and required by common prudence.

It is contended that the defendant was justified in refusing to complete the purchase and to accept the deed because it contained no covenant of general warranty ; but the plaintiff was under no obligation to enter into such covenant ; it would be unreasonable to require it ; its omission therefore could not discharge the defendant from the performance of his engagement.

The plaintiff, before he could entitle himself to this action, was bound to perform, or offer to perform, whatever it was incumbent on him to do on his part ; and this within reasonable time ; and we are of opinion that the tender of a deed within two days of the sale was within reasonable time. The law would justify the defendant in delaying to complete the contract, until he should have had opportunity to take advice, as to the formality and validity of the instrument tendered. Whether a reasonable time had been afforded for this purpose, before the plaintiff again proceeded to sell the land, might possibly have been called in question, if the defendant, instead of requesting time to take

advice, had not promptly refused to accept the deed and to pay the money, without making any objection to the form of the conveyance.

It has been argued by the counsel for the defendant that, by the statute of frauds, the memorandum, required to be made by its provisions, should appear by the declaration to have been in writing. This position is not warranted by the authorities ; and if it was, it does appear by this declaration that the contract relied upon was made in writing, if signed by a party authorized to do so, as the agent of the defendant.

But the principal point presented in this case is, whether in a sale of real estate at auction, the auctioneer is to be regarded as the agent of the purchaser, and as such competent to charge him by his signature. This is a question of great importance ; and one which does not appear to have been decided, either in this State or in Massachusetts.

It may be urged that the auctioneer, who is directly employed and deputed to act for the seller, ought in no case to be regarded as the agent of the purchaser. If this were *res integra*, strong reasons might be and have been offered in support of this position. But since the case of *Simon v. Motivos*, 3 *Burr*. 1921, 1 *W. Bl.* 599, it has been uniformly held that in sales of goods at auction, the auctioneer is to be considered as the agent of both parties ; and that his memorandum, stating the price and conditions of sale, with the name of the buyer, is a sufficient signing to charge him within the statute of frauds. This is a principle generally known to the commercial part of the community ; and has become too firmly established to be shaken. In regard to the question, whether the auctioneer is to be deemed the agent of both parties in the sale of land, or any interest therein, there has been less uniformity of opinion. The origin of the cases in which the negative has been adopted, and their history and progress, together with a series of later cases in which the affirmative has prevailed, as it would seem upon more mature consideration, has been clearly exhibited by the counsel for the plaintiff. We adopt the latter as the better opinion. There does not appear to be any good reason, why the auctioneer should be viewed as the

agent of the purchaser in the sale of goods, which does not equally apply in the sale of land. The manner of conducting sales at auction must be presumed to be well known to all who resort to them in the character of bidders. Whoever bids, does in effect authorize the auctioneer to sign his name as purchaser, if no other person bids a higher sum. The *locus penitentiæ* may be considered as continuing until this is actually done, or at least until his offer is accepted. But if the bid is not seasonably retracted, the memorandum of the auctioneer may be considered as deliberately authorized ; and this is all which the statute requires.

The declaration is adjudged good.